**RECEIVED**

JUL 2 7 2007

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

JEFFREY URBAN, ET AL.

VERSUS

ACADIAN CONTRACTORS, INC.

CIVIL ACTION NO. 04-2211

JUDGE DOHERTY

MAGISTRATE JUDGE METHVIN

## RULING ON MOTION FOR SUMMARY JUDGMENT

Pending before this Court is a Motion for Summary Judgment [Doc. 31] filed by Third-Party Plaintiffs, Operators & Consulting Services(OCS) and Larry Simmons (Mr. Simmons). The motion is opposed by Third-party Defendants, Production Management Industries, L.L.C. (PMI) and Lexington Insurance Company (LIC). For the following reasons, the motion for summary judgment is GRANTED in PART and DENIED in part.

## FACTS

A review of the pleadings and submissions reveals the following uncontested facts:

On December 18, 1997, OCS entered into a Master Service Agreement [MSA] with Union Oil Company of California [Unocal] for OCS to provide services to Unocal, which was engaged in the business of "exploring for, producing, exploiting and transporting oil, gas, and other hydrocarbons." The OCS/Unocal MSA identifies OCS as "CONTRACTOR"and Unocal as "COMPANY." (*Motion for Summary Judgment*, Exhibit 2). In the OCS/Unocal MSA, OCS and Unocal reciprocally agree to defend and indemnify each other. Section 6.1 of the OCS/Unocal MSA provides the following with respect to indemnification:"

6.1 <u>CONTRACTOR'S INDEMNITY</u>. CONTRACTOR HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD HARMLESS COMPANY AND ANY OF ITS PARENT, SUBSIDIARY, AFFILIATED OR RELATED COMPANIES, OR COMPANIES WITH WHOM ANY OF THEM HAVE ENTERED SHARING AGREEMENTS, AND ITS AND THEIR LESSORS, NON-OPERATORS, JOINT VENTURERS, PARTNERS, CO-OWNERS OR CO-LESSEES (AND THEIR LESSORS), AND CONTRACTORS AND SUBCONTRACTORS OF EVERY TIER (OTHER THAN CONTRACTOR AND ITS SUBCONTRACTORS OF EVERY TIER WHICH ARE HEREAFTER REFERRED TO COLLECTIVELY AS "CONTRACTOR'S SUB-CONTRACTORS"), AND THE RESPECTIVE OFFICERS, DIRECTORS, EMPLOYEES, AGENTS, SERVANTS, HEIRS, REPRESENTATIVES, SUCCESSORS, AND ASSIGNS OF ALL OF THE FOREGOING (COLLECTIVELY REFERRED TO THROUGHOUT THIS CONTRACT AS "COMPANY GROUP"), IN EACH AND EVERY CASE INCLUDING ANY CASE IN WHICH AN INDEMNITEE HEREUNDER MAY BE ALLEGED OR PROVEN TO HAVE BEEN NEGLIGENT (INCLUDING BUT NOT LIMITED TO ACTIVE, PASSIVE, SOLE, JOINT, CONCURRENT, COMPARATIVE, CONTRACTUAL AND GROSS NEGLIGENCE), OR OTHERWISE LEGALLY LIABLE (WITH OR WITHOUT FAULT OR WHETHER STRICTLY LIABLE OR RESPONSIBLE FOR ANY UNSEAWORTHINESS OR DEFECT, WHETHER OR NOT PRE-EXISTING EXECUTION OF THIS CONTRACT), FROM AND AGAINST ANY AND ALL LIABILITY OR DAMAGES, CLAIMS, LIENS, PUNITIVE AND EXEMPLARY DAMAGES, EXPENSES, COURT COSTS, ATTORNEY'S FEES, FINES, PENALTIES, JUDGMENTS, AND SETTLEMENTS (HEREAFTER REFERRED TO COLLECTIVELY THROUGHOUT THIS CONTRACT AS "CLAIMS") DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH THE FOLLOWING:

    A.    ALL LOSS OF DAMAGE TO CONTRACTOR'S EQUIPMENT OR PROPERTY . . . .

    B.    ANY PERSONAL OR BODILY INJURY, ILLNESS, DISEASE, OR DEATH TO CONTRACTOR'S EMPLOYEES, INVITEES OR THE EMPLOYEES OF CONTRACTOR'S SUBCONTRACTORS, DIRECTLY OR INDIRECTLY ARISING OUT OF OR IN CONNECTION WITH ANY OPERATIONS OR GOODS AND SERVICES UNDER THIS CONTRACT, INCLUDING WITHOUT LIMITATION, ANY LOADING OR UNLOADING, INGRESS OR EGRESS, CARGO OPERATIONS, AND/OR THE PRESENCE OF ANY

> **INDIVIDUAL, ON ANY VESSEL, PLATFORM OR OTHER PREMISES OR AT ANY WORKSITE, REGARDLESS OF HOW, WHEN, OR WHERE SUCH INJURY, ILLNESS, DISEASE OR DEATH OCCURS . . . .**

*Id.* at 3 (emphasis in original).

Section 8.1 of the OCS/Unocal MSA provides the following with respect to "insurance:"

8.1   At all times during the term of this Contract, CONTRACTOR agrees to carry insurance of the types and in the minimum amounts set forth on Exhibit A and/or Exhibit B (whichever is applicable) attached hereto and made a part hereof for all purposes and to comply with all requirements therein.  With respect to CONTRACTOR's liabilities and CONTRACTOR's indemnity obligations, all liability insurance policies of CONTRACTOR, whether specifically required by this Contract or not, excepting only workers' compensation coverage, shall be endorsed to name COMPANY GROUP as additional insured.  Additionally, all insurance policies of CONTRACTOR, whether specifically required by this Contract or not, shall be endorsed to waive subrogation against COMPANY GROUP and its insurers with respect to CONTRACTOR's liabilities and CONTRACTOR's indemnity obligations unless such waiver of subrogation is expressly prohibited by state law in the state where insurance is to be purchased.  Any deductibles under any of CONTRACTOR's policies of insurance shall be the responsibility of CONTRACTOR.

*Id.* at p.5.

Section 13.9 of the OCS/Unocal MSA sets forth the following with respect to warranties - labor, work, equipment, materials, supplies and services:"

CONTRACTOR warrants that it is an expert in the field; that all work will be performed safely and in a good and workmanlike manner; that CONTRACTOR has adequate equipment in good working order in full compliance with legal requirements; that CONTRACTOR and its Subcontractor's personnel have been trained by a qualified trainer in all local, state and federally mandated training including, but not limited to, OSHA's 29 CFR, EPA's 40 CFR and DOT's 49 CFR; that CONTRACTOR's personnel are fully trained and capable of efficiently and safely operating such equipment and performing services for COMPANY; that CONTRACTOR shall provide all required personal protective equipment for the job including, but not limited to hard hat, safety eyewear, and hard toe, slip resistant footwear meeting ANSI z41-1983 specs; that CONTRACTOR regularly conducts safety and loss control training and holds jobsite safety meetings; that all materials,

equipment, goods, supplies or manufactured articles furnished by CONTRACTOR in the performance of Goods and Services shall be of suitable quality and workmanship for their intended purposes, in accordance with specifications, and shall be free from defects; that CONTRACTOR will conduct regular physical conditions inspections of the contract work area and submit records of those inspections upon request by COMPANY; that CONTRACTOR will keep and maintain equipment furnished by COMPANY in good condition at CONTRACTOR's expenses, and upon the termination of the use of such equipment, turn over same to COMPANY in the same condition as when received, subject, however, to ordinary wear and tear, and that CONTRACTOR will examine before using all materials, equipment and supplies furnished by COMPANY for, relating to, or in connection with performance of Goods and Services under this Contract, and will exercise reasonable diligence to report to COMPANY any defects therein in time to allow COMPANY to replace same without delaying operations. CONTRACTOR further covenants, warrants and represents that all work performed by it hereunder shall be conducted in accordance with the most stringent safety regulations, precautions and procedures by employing all necessary and desirable protective equipment and devices, whether suggested or required by safety associations, government agencies, municipalities, or otherwise. Notwithstanding the provisions of Section 6.2 or any other provisions of Section 6, CONTRACTOR agrees to release, defend, indemnify and hold harmless COMPANY GROUP (as defined in Section 6.1 hereof) from and against any and all liability or damages, including without limitation, any losses, damages, claims, liens, punitive and exemplary damages, expenses, court costs, attorney's fees, fines, penalties, judgments and settlements directly or indirectly resulting from any breach of these warranties.

*Id.* at 7.

On September 1, 1998, PMI entered into virtually an identical MSA with Unocal. The PMI/Unocal MSA refers to PMI as "CONTRACTOR" and Unocal is identified as "COMPANY." (*Motion for Summary Judgment*, Exhibit 1). The language found in Sections 6.1, 8.1, and 13.9 of the PMI/Unocal MSA is identical to the language found in Sections 6.1, 8.1, and 13.9 of the OCS/Unocal contract. (*Motion for Summary Judgment*, Exh. 1).

On October 25, 2001, Simmons entered a "Consultant Agreement" with OCS, which contracted for his service as a "consultant." The language in the "Consultant Agreement" provides Simmons is "an independent contractor" of OCS. (*Motion for Summary Judgment*, Exh. 3).

-4-

On February 17, 2003, Mr. Jeffrey H. Urban, a PMI employee, was injured on a Unocal offshore oil and gas platform located upon the Outer Continental Shelf in the Gulf of Mexico, off the coast of Texas.  At the time of Jeffrey Urban's injury, the OCS/Unocal MSA, the PMI/Unocal MSA, and the OCS/Simmons "Consultant Agreement" were in effect.

On October 27, 2004, Dawn M. Urban, and Jeffrey H. Urban, individually and on behalf of his two minor children, Haydon J. Urban and Kenzie M. Urban, filed a petition with this Court.  In that petition, Jeffrey Urban alleged he was in the course and scope of his employment with PMI on February 17, 2003, when he sustained severe disabling injuries to his right knee and other parts of his body while attempting to extinguish a fire which was caused through the "negligence and/or fault" of Acadian Contractors, Inc. (Acadian), which was allegedly providing services to Unocal by rerouting piping for a gas compressor on the Unocal platform.  The non-exclusive theories of negligence and/or fault urged by Jeffrey Urban as against Acadian include: (a) providing a defective gas sniffer, (b) failing to properly follow Unocal's hot work and burning procedure; (c) failing to provide properly trained fire watch personnel; (d) failing to provide proper supervision; (e) failing to provide a safe place to work; (f) failing to comply with applicable Coast Guard and/or Mineral Management Services (MMS) regulations and OSHA regulations; and (g) any other acts of negligence to be proven at or before the trial of this matter. [Doc. 1].

On November 22, 2004, Dawn M. Urban, and Jeffrey H. Urban, individually and on behalf of his two minor children, Haydon J. Urban and Kenzie M. Urban, filed a First Amended Complaint in which they added OCS and Mr. Simmons as defendants. The Urbans alleged OCS contracted with Unocal to provide an OCS employee, Simmons, to act as a consultant to oversee the work site, and therefore, OCS is vicariously responsible for the negligent acts of its "employee," Simmons.  The

Urbans further allege the platform fire and injuries suffered by Jeffrey H. Urban were caused through the joint and/or several negligence and/or fault of Acadian, OCS, and/or Simmons, who were responsible for the non-exclusive theories alleged in the original petition. Additionally, the Urbans averred Acadian, OCS, and Simmons were guilty of "gross neglect," willful acts or omissions and/or malice which were the proximate causes of the incident and injuries. The Urbans alleged therefore, they were entitled to punitive damages. The Urbans prayed for a trial by jury and sought to recover a judgment against Acadian, OCS, and Simmons for actual and exemplary damages. [Doc. 8].

On February 17, 2005, Jeffrey Urban died. Thereafter, on February 13, 2006, Dawn Urban, individually and on behalf of her children, Haydon J. Urban and Kenzie M. Urban, filed a Second Amending Complaint for damages. The Urbans alleged that, as a result of the negligence and/or fault of Acadian, OCS, and Simmons, Jeffrey H. Urban died while undergoing treatment on February 17, 2005. The Urbans added additional claims against Acadian, OCS, and Simmons for survival and wrongful death. [Doc. 23].

On June 16, 2006, OCS and Simmons filed a Third-party Complaint against PMI and its insurer, LIC, alleging Jeffrey Urban was an employee of PMI. OCS and Simmons further argued PMI entered into the PMI/Unocal MSA, which contractually required PMI to "defend, indemnify and hold harmless Unocal and its contractors, subcontractors, and the employees thereof (which includes OCS and Simmons) from and against claims such as those asserted by the plaintiffs" in the principal demand. OCS and Simmons further averred PMI was obligated to "furnish primary insurance naming Unocal, its subcontractors, contractors, and employees thereof (which includes OCS and Simmons) as additional insureds." OCS and Simmons argued LIC issued a Commercial

General Liability policy to PMI which named OCS and Simmons as additional insureds under that policy at the time of Jeffrey Urban's accident. Accordingly, OCS and Simmons alleged PMI and its insurer, LIC, owed defense and indemnity to OCS and Simmons by way of the PMI/Unocal MSA, as "subcontractors, contractors and [or] employees" of Unocal. [Doc. 26].

On August 10, 2006, OCS and Simmons filed the instant Motion for Summary Judgment seeking defense and indemnity from PMI and its insurer LIC, as discussed more thoroughly below. [Doc. 31]. Thereafter, the Urbans settled their claims against Acadian, OCS and Simmons during the course of a mediation, at which PMI, "agreed to contribute toward settlement of the plaintiffs' claims *on behalf of* OCS and Simmons."[1] (*Memorandum in Opposition to Motion for Summary Judgment*, p. 1).

On August 16, 2006, PMI and LIC filed their Answer to the Third Party Complaint filed by OCS and Simmons denying liability for defense and indemnity in favor of OCS and Simmons, arguing among other things that OCS and Simmons breached warranties under the OCS/Unocal MSA which PMI argues should relieve PMI from its obligations under the PMI/Unocal MSA. [Doc. 33].

On August 29, 2006, PMI and LIC filed their Memorandum in Opposition to the Motion for Summary Judgment, noting the underlying claims in the principle demand were settled and that the Motion for Summary Judgment was thereby reduced to a claim to recover attorney fees by OCS and Simmons. (*Memorandum in Opposition*, pp. 1-2). In their Opposition, PMI and LIC denied any obligation for defense and indemnity, as discussed more thoroughly below. [Doc. 36].

---

[1] A copy of the Settlement Agreement has not been provided to this Court. Accordingly, the terms of settlement are unknown to this Court.

# LAW

## A. Summary Judgment Standard

"A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. Proc. 56(b).  Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c).  Fed. R. Civ. Proc. 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Additionally, as stated in Capitol Indem. Corp. v. U.S., 452 F.3d 428, 430-31 (5th Cir. 2006):

> The moving party bears the burden of identifying an absence of evidence to support the nonmoving party's case.  Summary judgment is properly granted if the record does not contain appropriate summary judgment evidence which would sustain a finding in the nonmovant's favor on any issue as to which the nonmovant would bear the burden of proof at trial.

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment:

> The court must view facts and inferences in the light most favorable to the party opposing the motion. A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Credibility determinations are not part of the summary judgment analysis.  Hunt v. Rapides Healthcare Sys. LLC, 277 F.3d 757, 762 (5th Cir.  2001).

To the contrary, "in reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." Roberts v. Cardinal Servs., 266 F.3d 368, 373 (5th Cir. 2001).

## B.      Applicable Law

This matter arises under the Outer Continental Shelf Lands Act (OCSLA), 43 U.S.C.A. 1333, *et seq*. There is no dispute that Texas law, which will be discussed in greater detail below, governs the contractual relationship between OCS, Simmons, PMI and LIC.[2] Further, the parties in their pleadings on the Motion for Summary Judgment, do not dispute the indemnification provisions contained in the PMI/Unocal MSA and the OCS/Unocal MSA do not violate the Texas Oilfield Anti-Indemnity Act (TOAIA), Tex. Civ. Prac. and Rem. Code. Ann. Section 127.003 (West 2007).

## DISCUSSION

In their motion, OCS and Simmons seek a summary judgment in their favor and against PMI and LIC. Specifically, OCS and Simmons request the following relief: (1) should a judgment in any amount be rendered against OCS and Simmons, that a judgment also be rendered in favor of OCS and Simmons against PMI and its insurer, LIC, for the full amount of any judgment rendered against OCS and Simmons, together with interest, attorney's fees, costs, expenses, and other damages to which OCS and Simmons are entitled; (2) a declaration that OCS and Simmons are entitled to additional insured coverage under the LIC policy of insurance issued by LIC to PMI with respect to "all claims asserted herein" against PMI and LIC; (3) a judgment in favor of OCS and Simmons

---

[2] The parties agree Texas law governs this matter. The contracts at issue were for work on a platform off the coast of Texas and of such a nature as to command the application of Texas law. Seeing no error in law, this Court will apply Texas law to the contracts at issue.

against PMI and LIC for "complete and full defense and indemnification;" and (4) a judgment in favor of OCS and Simmons against PMI and LIC for the reimbursement of "all defense costs incurred thus far, as per the contractual obligation agreed to by PMI."

This Court will address each request for relief separately.

**A.**  **A judgment in favor of OCS and Simmons against PMI and its insurer, LIC, for the full amount of any judgment rendered against OCS and Simmons, together with interest, attorney's fees, costs, expenses, and other damages to which OCS and Simmons are entitled**

This Court finds OCS and Simmons have failed to carry their burden of proof with respect to their request for a judgment in their favor against PMI and LIC (as PMI's insurer) for the full amount of any judgment rendered against OCS, together with interest, attorney's fees, costs, expenses, and other damages to which OCS and Simmons are entitled.  OCS and Simmons submitted no evidence a judgment has been rendered against OCS and Simmons beyond that which this Court might assume to have been contemplated as a result of the agreed-to settlement.  The underlying primary claims have been resolved by way of settlement, and it is noted that a review of the pleadings and submissions in this matter reveals no indication OCS and Simmons paid any monies to plaintiffs to resolve the plaintiffs' underlying claims of negligence. Rather, it appears PMI [not LIC], paid plaintiffs *on behalf of OCS and Simmons* to obtain a release of all parties. (Memorandum in Opposition, pp. 1-2, 5).

Further, at this time, the Court has no copy of the LIC insurance policy for a proper review. Without the provisions of the LIC policy issued to PMI, this Court cannot address or determine the

nature of any possible coverage which might have been provided under the LIC policy to OCS, Simmons or any other party.[3]

Thus, it would seem the narrow issue which this Court can address at this juncture is whether *PMI* owes OCS and Simmons *cost of defense.* Accordingly, OCS's request for a judgment in their favor against PMI and LIC (as PMI's insurer) for the full amount of any judgment rendered against OCS, together with interest, attorney's fees, costs, expenses, and other damages to which OCS and Simmons are entitled is DENIED.

**B.   A declaration that OCS and Simmons are entitled to additional insured coverage on the LIC policy of insurance issued by LIC to PMI with respect to "all claims asserted herein"against PMI and LIC**

As noted above, OCS and Simmons have presented insufficient evidence for this Court's consideration to determine whether there is any coverage under the LIC policy for OCS and Simmons. Accordingly, the request by OCS and Simmons for a declaration that OCS and Simmons are entitled to additional insured coverage under the LIC policy of insurance issued by LIC to PMI with respect to "all claims herein" against PMI and LIC is hereby DENIED.

**C.   A judgment in favor of OCS and Simmons against PMI and LIC for complete and full defense and indemnification**

OCS requests a judgment against PMI and LIC for "complete and full defense and indemnification." As noted above, the underlying disputes forming the basis of this matter have been resolved by way of settlement, and the claims for indemnity are briefed to this Court in light of the settlement. Morever, as discussed above, this Court lacks sufficient information to determine if coverage is owed under the LIC policy. Accordingly, the request for "complete and full defense <u>and</u>

---

[3] OCS and Simmons have submitted a "Broad Form Commercial Liability Endorsement" (the Endorsement) which neither address nor includes the scope of the underlying policy.

indemnification" by OCS and Simmons against PMI and <u>LIC</u> is hereby DENIED.  However, the request by OCS and Simmons for cost of <u>defense</u> as against <u>PMI</u> will be GRANTED for the following reasons.

As noted above, the narrow issue which this Court has sufficient evidence to address is whether *PMI* owes OCS and/or Simmons cost of defense in this matter.  Simply put, OCS and Simmons, as movants in the Motion for Summary Judgment, must demonstrate the right to the relief they seek, namely that PMI owes costs expended by OCS and Simmons defending themselves in the primary demand filed by plaintiff, Jeffery Urban.

There is no dispute among the parties as to the following: (1) PMI entered into the PMI/Unocal MSA pursuant to which "PMI agreed to defend and indemnify Unocal and its contractors for injuries involving PMI employees in connection with operations and services under the contract;" (2) OCS entered the OCS/Unocal MSA in which OCS contracted with Unocal to provide services to Unocal; (3) Simmons entered into a contract with OCS whereby Simmons acted as an OCS consultant; (4) Jeffrey Urban was a PMI employee who, along with his family members, alleged his personal injuries were the result of negligence and/or fault of OCS and Simmons. (*Response by PMI and LIC to Statement of Material Facts not at Issue, ¶¶ 1-3*).  The relevant contracts, namely the PMI/Unocal MSA, the OCS/Unocal MSA, and the OCS/Simmons "Consultant Agreement" contain language argued as the basis for the alleged defense obligations.  It is undisputed there is no contract between PMI, OCS, and Simmons.

As there is no contract between OCS, Simmons and PMI, in order for OCS and Simmons to prevail as against PMI, OCS and Simmons must establish an additional basis for their claim for defense costs from PMI.  OCS and Simmons argue their rights exist by way of: (1) PMI's duty to

defend Unocal and Unocal's "contractors and subcontractors of every tier . . . and the employees, agents, servants, heirs, representatives, successors and assigns of all the foregoing;" (2) the OCS/Unocal contract, pursuant to which OCS is a Unocal contractor; and (3) the OCS/Simmons contract pursuant to which Simmons was a consultant on behalf of OCS.

PMI does not dispute that, at the time of Jeffrey Urban's alleged injury, OCS was a Unocal contractor and that Simmons was working as an OCS consultant; however, PMI disputes whether the *factual circumstances* surrounding Jeffrey Urban's alleged injury fall within the scope of the defense obligation owed by PMI to Unocal and its "contractors and subcontractors of every tier . . . and the employees, agents, servants, heirs, representatives, successors and assigns of all the foregoing." PMI also argues it owes no defense to OCS and Simmons because OCS and Simmons were grossly negligent and therefore breached warranties owed by OCS to Unocal pursuant to the *OCS/Unocal MSA* and that breach of warranty *by OCS* and Simmons *under the OCS/Unocal contract,* and Simmons' consulting contract with OCS vitiated the defense obligations *owed by PMI* to Unocal and  its "contractors and subcontractors of every tier . . . and the employees, agents, servants, heirs, representatives, successors and assigns of all the foregoing, *under the PMI/Unocal contract.*"

### 1. Whether PMI Owes a Duty to OCS to Defend OCS for the Claims by Jeffrey Urban Against OCS

As noted above, it is undisputed there is no contract between PMI and OCS or Simmons. However, this Court has been presented with other relevant contracts which were in force on the date of Jeffrey Urban's accident from which OCS and Simmons argue the PMI defense obligation flows. Specifically, as to the defense obligation allegedly owed by PMI to OCS, this Court has been presented with: (1) the PMI/Unocal MSA; and (2) the OCS/Unocal MSA.  With respect to those

contracts, this Court considers: (1) PMI's duty to defend Unocal and its "contractors and subcontractors of every tier . . . and the employees, agents, servants, heirs, representatives, successors and assigns of all the foregoing" under the PMI/Unocal MSA; (2) whether OCS falls within that class of persons, *i.e.,* Unocal's "contractors and subcontractors of every tier . . . and the employees, agents, servants, heirs, representatives, successors and assigns of all the foregoing" to whom PMI potentially owes a duty to defend under the PMI/Unocal MSA, and if so; (3) whether the *factual circumstances* of Jeffrey Urban's alleged injury fall within the scope of that defense obligation contained in the PMI/Unocal MSA; and if so, (4) whether an alleged breach of the warranty provisions under the *OCS/Unocal MSA* can relieve *PMI* from the duty to defend Unocal and "its contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives," pursuant to the *PMI/Unocal MSA* for claims made by Jeffrey Urban against OCS.

### a.   PMI's Duty to Defend under the PMI/Unocal MSA

Pursuant Section 6.1 and 6.1(B)of the PMI/Unocal MSA, PMI expressed its agreement to defend the "company group," which includes Unocal, its "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives," for "any case" in which the company group may be *"alleged or proven"* to have been "negligent," which *includes* "active, passive, sole, joint, concurrent, comparative, contractual *and gross negligence"* directly or indirectly *"arising out of"* or *"in connection with"* any personal or bodily injury, illness, disease, or death to PMI's employee, *directly or indirectly "arising out of" or "in connection with"* any operations or goods and services under this contract, including, "without limitation," any loading or unloading, ingress or egress, cargo operations, "and/or the *presence of any individual*," on "any

vessel, *platform* or other premises" or at "*any worksite, **regardless of how when, or where such injury, illness, disease or death occurs.***" (emphasis added)

The clear language of the policy requires PMI to defend all parties who would fall within the class denoted as the "company group" as defined. Thus, the initial issue becomes whether OCS and Simmons, either or both, would fall within that defined group; OCS and Simmons will be addressed separately.

### b.   Whether OCS falls within the class of persons to whom PMI potentially owes a duty to defend under the PMI/Unocal MSA

As noted above, Section 6.1 and 6.1(B) of the PMI/Unocal MSA indicates PMI agreed to defend the "company group," which includes Unocal, its "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives." There is no dispute that OCS entered into the OCS/Unocal MSA pursuant to which OCS is a "contractor" for Unocal. Likewise, there is no dispute the OCS/Unocal MSA, which identifies OCS as a Unocal "contractor," as well as the PMI/Unocal MSA, which provides for PMI's duty to defend Unocal's contractors and sub-contractors, were in effect at the time of Mr. Urban's alleged injury. Accordingly, there is no dispute that, at the time of Jeffrey Urban's alleged injury, OCS was a Unocal contractor to whom PMI potentially owes a duty to defend the claims by Jeffrey Urban against OCS pursuant to Section 6.1 of the PMI/Unocal MSA.

### c.   Whether the Factual Circumstances of Jeffrey Urban's Alleged Injury Fall Within the Terms of the PMI/Unocal MSA

There is no dispute Jeffrey Urban was a PMI employee at the time of the injury. There is no dispute Jeffrey Urban alleged personal and bodily injuries due to the alleged negligence of OCS, a Unocal contractor at the time of Jeffrey Urban's injury and thus, on its face defense should flow to

OCS. However, PMI argues the occurrence at issue falls outside the scope of the obligation owed

arguing the defense provision in Section 6.1 of the PMI/Unocal MSA should be construed to cover

"only those losses which reasonably appear to have been within the contemplation of the parties,"

and "thus, it should not be read to impose liability for those losses of liabilities which are neither

within its terms nor of such a character that it can be reasonably inferred that the parties intended to

include them within the [defense and] indemnity coverage," relying on *Corbitt v. Diamond M.*

*Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).[4]

PMI argues Jeffrey Urban's accident was unrelated to any PMI activities aboard the platform

and therefore "not within the scope" of the PMI/Unocal MSA defense provision and also argues the

accident did not "arise out of" nor was it "in connection with" any PMI operations contemplated

under the PMI/Unocal MSA. Specifically, PMI argues Jeffrey Urban was "morally bound to act to

extinguish a fire" caused by Acadian under the supervision of OCS and Mr. Simmons. Citing no

authority, PMI contends the moral obligation is outside the language in Section 6.1 of the

PMI/Unocal MSA or the language itself, is overly broad, "effectively meaningless," and

unenforceable.

---

[4] Notably, the parties agree Texas law governs this matter, but *Corbitt*, on which PMI relies, is a Louisiana matter involving the application of maritime law. This Court notes however, even assuming **arguendo** *Corbitt* would govern this matter, cases since *Corbitt* have distinguished *Corbitt* on its language. *See, e.g., Sumrall v. Ensco Offshore Co.*, 291 F.3d 316, 318-319 ("a close reading of *Corbitt*, however, indicates that the indemnification provision at issue in that case was less broadly drafted than, and thus is distinguishable") (*citing Demette v. Falcon Drilling Co., Inc.*, 280 F.3d 492 (5th Cir.2002); *Campbell v. Sonat Offshore Drilling, Inc.*, 27 F.3d 185 (5th Cir.1994) ("Campbell II "); *Campbell v. Sonat Offshore Drilling, Inc.*, 979 F.2d 1115 (5th Cir.1992) ("Campbell I "); *Babcock v. Cont'l Oil Co.*, 792 F.2d 1346 (5th Cir.1986) (per curiam); *Mills v. Zapata Drilling Co., Inc.*, 722 F.2d 1170 (5th Cir.1983), overruled on other grounds, *Kelly v. Lee's Old Fashioned Hamburgers, Inc.*, 908 F.2d 1218 (5th Cir.1990) (per curiam); *Lirette v. Popich Bros. Water Transp., Inc.*, 699 F.2d 725 (5th Cir.1983)).

This Court finds no authoritative support for PMI's argument that the language of Section 6.1 of the PMI/Unocal MSA is not so broad as to be effectively meaningless and unenforceable. Rather, this Court notes Texas jurisprudence is to the contrary. Specifically, Texas law strongly favors parties' freedom of contract. *Gym-N-I Playgrounds, Inc. v. Snider,* 220 S.W.3d 905, 912 (Tex. 4/20/2007) (freedom of contract allows parties to bargain for mutually agreeable terms and allocate risks as they see fit); *BMG Direct Mktg., Inc. v. Peake,* 178 S.W.3d 763, 767 (Tex.2005) (contracts when entered into freely and voluntarily shall be held sacred and shall be enforced by Courts of justice; therefore, "you have this paramount public policy to consider-that you are not lightly to interfere with this freedom of contract").

Texas law requires courts to interpret contracts, including their defense and indemnity agreements, in a manner so as to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Stine v. Stewart,* 80 S.W.3d 586, 589 (Tex. 2002) (*citing MCI Telecom. Corp. v. Texas Utilities Elec. Co.,* 995 S.W.2d 647, 652 (Tex. 1999)). If a written instrument is worded so that it can be given a certain or definite legal meaning or interpretation, Texas courts construe the contract so that it has meaning as a matter of law. *Enter Leasing Co. v. Barrios,* 156 S.W.3d 547, 549 (Tex. 2004) (*citing Coker v. Coker,* 650 S.W.2d 391, 393 (Tex. 1983)). Texas law contains a presumption that the parties to a contract intended every contractual provision to have meaning. *Schlumberger Tech. Corp. v. Swanson,* 959 S.W.2d 171, 180 (Tex. 1997).

The Texas State Supreme Court in *Utica Nat. Ins. Co. of Texas v. American Indem. Co.* cited with approval the Fifth Circuit's treatment of the term "arises out of." 141 S.W.3d 198, 203 (Tex. 7/9/2004) (*citing Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.,* 189 F.2d 374, 378

-17-

(5th Cir.1951) (looking to Missouri jurisprudence, the Fifth Circuit explained,"arising out of" are words of much broader significance than "caused by;" they are ordinarily understood to mean "originating from," "having its origin in," "growing out of," or "flowing from," or in short, "incident to, or having connection with")); *see also Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 370 (5th Cir.1998) ("arising out of," are "broad, general, and comprehensive terms effecting broad coverage").

This Court also notes, by way of analogy that, in matters arising under insurance contracts, the Texas State Supreme Court has held that "arise out of" means that there is simply a "causal connection or relation," which is interpreted to mean that there is "but for causation, though not necessarily direct or proximate causation." *Utica Nat. Ins. Co. of Texas v. American Indem. Co.*, 141 S.W.3d at 203 (*citing Mid-Century Insurance Co.*, 997 S.W.2d 153, 156 (Tex.1999)). Additionally, by way of analogy, this Court further notes the duty to defend and the duty to indemnify are distinct and separate duties and pursuant to Texas jurisprudence, the duty to defend is the broader. *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 82 (Tex.1997); *accord E & L Chipping Co., Inc. v. Hanover Ins. Co.*, 962 S.W.2d 272, 274-75 (Tex. App.-Beaumont 1998) (the duty to defend is broader than the duty to indemnify). Thus, an insurer may have a duty to defend but, eventually, no duty to indemnify. *Id.* In other words, the duty to defend "is unaffected by facts ascertained before suit, developed in trial, or by the ultimate outcome of the case." *Reser v. State Farm Fire & Cas. Co.*, 981 S.W.2d 260, 263 (Tex.App.-San Antonio 1998). It is only when no facts sufficiently fall within the agreement that the party is excused from its duty to defend. *Fid. & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex.1982).

Consistent with the jurisprudential principles noted above, this Court must harmonize and give effect to all provisions of the contract if possible so that none will be rendered meaningless. The express provisions of the contract are broadly worded, and envision the circumstance which is before this Court – a party being on a platform and that presence having consequence. The language of the contract can be given a certain and definite legal meaning or interpretation without doing any harm to the language of the contract, rather the language contemplates a broad reading when it notes defense is owed for any "case" "arising out of" "the presence of any individual" on any "platform" "or worksite" "regardless of how or when or where such injury . . . occurs." The broad language reflects the realities of work on offshore platforms where men come and go with the tasks at hand. Consequently this Court does not find the contract language to be so broad as to be meaningless nor the occurrence outside the scope of that broad language.[5]

Sections 6.1and 6.1(B) of the PMI/Unocal MSA identify the scope of PMI's indemnity obligation, *i.e.*, for "any and all" liability or damages whether "alleged or proven" and whether *"directly or indirectly arising out of"* or *"in connection with"* personal or "bodily injury," illness, disease or death "directly *or indirectly* arising out of" or *"in connection with"* any operations or goods and services including "without limitation" *the presence of* "any individual" on "any vessel, platform, or other premises" or at "any worksite, *regardless of how, when, or where such injury, illness, disease, or death occurs*." As noted the provisions are broadly written, can be read to contemplate the reality of work on an offshore platform, where as here, a contractor's employee is injured while merely "present" on the "platform" at "any worksite," "and the contract contemplates

---

[5] *See generally, LeBlanc v. Global Marine Drilling Co.*, 193 F.3d 873, 874 (5th Cir. 1999)(considering contractual obligations owed by a casing subcontractor to a drilling contractor for injuries to the casing subcontractor's employee "arising out of the performance of" a Master Service Agreement).

a broad reading of how the injury might have occurred, as it also reads, regardless of how, when and where such injury occurs." Thus, this Court finds the clear language of the PMI/Unocal MSA is written broadly enough to encompass the factual scenario at issue and guided by clear Texas jurisprudence cited above, would find the language not to be so broad as to be without meaning.[6]

PMI, without providing this Court with any authoritative support for its position, also and further, argues that the defense provisions found at Section 6.1 and Section 6.1(B) of the PMI/Unocal MSA should not be "allowed to a party," namely OCS or Simmons, because Jeffrey Urban's alleged injury did not arise out of the performance of service under the PMI/Unocal MSA. Specifically, PMI argues OCS and Simmons should not be entitled to defense by PMI under the PMI/Unocal MSA because OCS and Simmons were "allegedly guilty of gross negligence" and because "the injury to the indemnitor's employee" occurred while serving in the role of rescuer or "good Samaritan," seeking to extinguish a fire caused by the gross negligence of the indemnitee. PMI's argument however, is undermined by the clear language of the defense provision in the PMI/Unocal MSA. Pursuant to Section 6.1 and Section 6.1(B) of the PMI/Unocal MSA, PMI agreed to defend the company group, which includes OCS, for "alleged or proven" acts of negligence "including but not limited to" active, passive, sole, joint, concurrent, comparative, contractual and **gross negligence**, or **otherwise legally liable (with or without fault** or whether **strictly liable** or responsible for any unseaworthiness or defect, whether or not pre-existing execution of this contract." Thus, the clear, unambiguous language of the PMI/Unocal MSA addresses liability couched upon gross negligence and is clear such gross negligence does not vitiate the defense obligation. The clear language of the

---

[6] PMI has suggested additional discovery should be taken to further establish the facts and circumstances concerning how the accident occurred. However, given the broad and clear language of the PMI/Unocal MSA, additional discovery is not needed.

contract notes also, the negligence need not be proven insofar as the duty to defend was owed for "*alleged* or proven" (emphasis added) negligence or other legal liability.   Additionally, PMI's argument that defense obligations owed for one's  gross negligence violates Texas public policy is somewhat attenuated by PMI's concession that the Texas Supreme Court has "specifically declined to rule on whether indemnity for one's own gross negligence violates public policy." (*Memorandum in Opposition*, pp. 8-9).  In light of the clear and unambiguous contractual language noted and the absence of authoritative support establishing such a provision violates Texas public policy, this Court finds PMI's argument unavailing.

In view of the foregoing, this Court finds there is no genuine issue of material fact in dispute as to the contractual obligations of the PMI/Unocal MSA and the duties owed by PMI thereunder to OCS as a contractor of Unocal.  Thus, this Court would find PMI owes the reasonable cost of defense of OCS pursuant to Sections 6.1 and 6.1(B) of the PMI/Unocal MSA, however, PMI argues an alleged breach **by OCS** of warranty provisions found in Section 13.9 of the **OCS**/Unocal MSA grants **PMI** relief from PMI's contractual obligation to defend OCS pursuant to the **PMI**/Unocal MSA, as discussed more thoroughly below.

### d.      Whether Warranty Provisions under the OCS/Unocal MSA Relieve PMI from the Duty to Defend OCS for Claims by Jeffrey Urban Against OCS

PMI argues it is relieved from its defense obligation owed to Unocal and its contractor, OCS, pursuant to Section 6.1 and 6.1(B) *of the PMI/Unocal MSA* because OCS allegedly breached its warranty of performance, owed by OCS pursuant to Section 13.9 of the *OCS/Unocal* MSA. Essentially, PMI argues its duty to defend Unocal and its contractor, OCS, triggered by Section 6.1 and 6.1(B) of the PMI/Unocal contract, is vitiated by an alleged breach of contractual warranties, owed by OCS to Unocal.

PMI argues it should be relived of _its_ obligations owed under _its contract with Unocal_, because of an alleged breach of the warranty of performance by OCS under the OCS/ Unocal MSA. PMI is not a signatory to the contract under which it alleges a breach; Unocal, the party to whom the alleged warranty of performance is owed has not alleged any such breach of its contract; OCS, the party who by way of its contract with Unocal owes the alleged warranty of performance has not admitted any such breach; and no claim has been made by any party pursuant to the OCS/Unocal MSA that any such contractual breach occurred.[7]

PMI's argument that an alleged breach _of an OCS's warranty_ owed to Unocal pursuant to the _OCS/Unocal contract_, is weak on its face as PMI grants no jurisprudential authority for basis to make such a claim, or to support its disjointed argument.  PMI is not a signatory to the contract between Unocal and OCS; neither signatory has alleged a breach of its contract.  Further, even assuming a non-signatory to a contract could claim rights under that contract and further assuming those rights could act to absolve obligations it owes under a separate and independent contract, which this Court does not so assume, the distinction drawn by the Texas courts with respect to those damages _arising in tort_ and those _arising in contract_ renders PMI's argument without persuasion. Specifically, the Texas Supreme Court has defined "good and workmanlike as _that quality of work_ performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in such a manner generally considered proficient by those capable of judging such work." (emphasis added)  _Melody Home Mfg. Co. v. Barnes_, 741 S.W.2d 349, 354 (Tex. 1987).  The Texas Supreme Court has not addressed whether negligence _in_

---

[7] Prefatorily, it is noted that there have been no claims alleging a breach of a warranty of any kind under the OCS/Unocal MSA _by any signatory to the contract,_ and PMI is not a signatory to the OCS/Unocal contract.  The Third-Party demand by OCS and Mr. Simmons against PMI is the only claim at issue against PMI in this matter.

*the manner of performing work* which is of *an otherwise workmanlike quality* is a breach of warranty. *Transworld Drilling v. Livingston Shipbuilding,* 693 S.W.2d 19, 22 (Tex. App. Beaumont 1985). In *Transworld,* Transworld argued negligence *in the performance of a task* was a breach of warranty. However, the court found no authority for such a proposition, noting Texas appellate courts have held the warranty of workmanlike performance refers to the *quality of the work* and *not to the incidences which occur while the work is being performed. Id.* The Court opined to hold otherwise, would effectively allow a covenant to perform in a good and workmanlike manner to be transformed into a contract of indemnity for negligent injuries to third parties, the exact argument made herein by PMI. *Haring v. Bay Rock Corp.,* 773 S.W.2d 676, 680 (Tex. App. San Antonio 1989).

Thus, even if PMI were in a legal position to argue the provisions and warranties of a contract to which it is not a party – which is in true question – the argument itself would fail pursuant to the applicable Texas law. Thus, this Court finds PMI's argument wholly unpersuasive. As noted, the argument made impermissibly blends the distinction between contract liability and tort liability as recognized by the Texas courts, arguing a breach, by another actor within the context of a contract to which PMI is not a party, and a breach which is not alleged by either signatory to the contract. In consideration of the foregoing, this Court finds PMI's unsupported argument wholly unpersuasive.[8] Accordingly, this Court finds PMI owes defense to OCS for the allegations against OCS by PMI's employee, Jeffrey Urban.

---

[8] PMI also, has urged additional discovery may be necessary to determine whether the breach of a warranty in fact occurred; however, given the distinction between tort liability and contract liability recognized by the Texas courts and this Court's legal determination made, this Court finds additional discovery is not necessary.

### 2.   Whether PMI Owes a Duty to Simmons to Defend Simmons for the Claims by Jeffrey Urban Against Simmons

As noted above, there is no contract between PMI and Simmons.  However, this Court has been presented with three contracts which were in force on the date of Jeffrey Urban's alleged accident.  Specifically, as to the defense obligation allegedly owed by PMI to Simmons, this Court has been presented with: (1) the PMI/Unocal MSA; (2) the OCS/Unocal MSA and (3) the OCS/Simmons "Consultant Agreement".  With respect to the contracts, this Court considers: (1) PMI's duty to defend Unocal and its "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives" under the PMI/Unocal MSA; (2) whether Simmons falls within the class of persons to whom PMI potentially owes a duty to defend under the PMI/Unocal MSA, *i.e.*, Unocal and its "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives;" (3) whether the factual circumstances of Jeffrey Urban's alleged injury fall within the scope of the defense obligations within the PMI/Unocal MSA; and (4) whether warranty provisions under the OCS/Unocal MSA relieve PMI from the alleged duty to defend Simmons for claims by Jeffrey Urban against Simmons.

### a.  PMI's Duty to Defend under the PMI/Unocal MSA

As noted above, pursuant Section 6.1 and 6.1(B) of the PMI/Unocal MSA, PMI expressed its agreement to defend the "company group," which includes Unocal, its "contractors and subcontractors *of every tier*" and their "respective officers, directors, employees, *agents, servants,* [and] *representatives,*" for "any case" in which the company group may be "*alleged or proven*" to have been "negligent," which includes "active, passive, sole, joint, concurrent, comparative, contractual and *gross negligence*" directly *or indirectly* "*arising out of*" or "*in connection with*" any

-24-

personal or bodily injury, illness, disease, or death to PMI's employee, directly or indirectly "*arising out of*" or "in connection with" any operations or goods and services under this contract, including, "without limitation," any loading or unloading, ingress or egress, cargo operations, "and/or the *presence of any individual*," on "any vessel, *platform* or other premises" or at "*any worksite, regardless of how when, or where such injury, illness, disease or death occurs*."

Thus, the clear language of the policy requires PMI to defend all parties who would fall within the class denoted as the "company group" as defined. Thus, the initial issue becomes whether Simmons would fall within that defined group.

### b.  Whether Simmons falls within the class of persons to whom PMI potentially owes a duty to defend under the PMI/Unocal MSA

"Company group," as defined in Section 6.1 of the PMI/Unocal MSA includes Unocal, its "contractors and subcontractors *of every tier*" and their "respective officers, directors, employees, *agents*, *servants*, [and] *representatives*." There is no dispute Simmons entered into the OCS/Simmons "Consultant Agreement" pursuant to which Simmons was to perform services for OCS. There is no dispute OCS was a contractor of Unocal. There is no dispute Simmons was onsite at the platform pursuant to the OCS/Simmons "Consultant Agreement" to perform consulting services for OCS. There is no argument, nor has any evidence been presented that Simmons, as a "consultant" for OCS, was not on site as a "contractor or subcontractor of every tier" of Unocal, or as an agent, servant, or representative of a contractor or subcontractor of Unocal, OCS, at the time of Jeffrey Urban's alleged injury.[9]  Moreover, there is no dispute that the following were in effect

---

[9] PMI indicates it "does not contest that Larry Simmons entered into a contract with OCS as a consultant;" however, PMI disputes its defense obligation under the PMI/Unocal MSA, "as Mr. Urban's accident did not arise out of or result from services performed by PMI under the contract, but instead arose out of Simmons' alleged gross negligence. . . ." (*Response to Statement of Facts not in Dispute*, ¶ 3).

at the time of Jeffrey Urban's alleged accident: (1) the OCS/Unocal MSA, which identifies OCS as a Unocal contractor; (2) the OCS/Simmons "Consultant Agreement", which identifies Simmons as a consultant for OCS; and (3) the PMI/Unocal MSA, which provides for PMI's duty to defend Unocal's "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives." Accordingly, there is no dispute that, at the time of Jeffrey Urban's alleged injury, Simmons was on site pursuant to the OCS/Simmons "Consultant Agreement" with OCS, a Unocal contractor.  Therefore, this Court finds Simmons to fall within the class to whom PMI potentially owes a duty to defend pursuant to Section 6.1 of the PMI/Unocal MSA for  the claims by Jeffrey Urban against Simmons.

### c.  Whether the Factual Circumstances of Jeffrey Urban's Alleged Injury Fall Within the Terms of the PMI/Unocal MSA

PMI indicates it "does not contest that Larry Simmons entered into a contract with OCS as a consultant;" however, PMI disputes its defense obligation under the PMI/Unocal MSA, "as Jeffrey Urban's accident did not arise out of or result from services performed by PMI under the contract, but instead arose out of Simmons' alleged gross negligence. . . ." (*Response to Statement of Facts not in Dispute,* ¶ 3).  As discussed above, this Court finds the factual circumstances of Jeffrey Urban's alleged injury fall within the broad, clear and unequivocal language contained within Sections 6.1 and 6.1(B) of the PMI/Unocal MSA, and thus defense is owed by PMI to Unocal and that class of Unocal's "contractors and subcontractors of every tier" and their "respective officers, directors, employees, agents, servants, [and] representatives." This Court finds Simmons falls within that class.

Further, Sections 6.1and 6.1(B) of the PMI/Unocal MSA identify the scope of PMI's indemnity obligation, *i.e.,* for "any and all" liability or damages whether "alleged or proven" and

whether *"directly or indirectly arising out of"* or *"in connection with"* personal or "bodily injury," illness, disease or death "directly *or indirectly arising out of"* or *"in connection with"* any operations or goods and services including "without limitation" *the presence of* "any individual" on "any vessel, platform, or other premises" or at "any worksite, *regardless of how, when, or where such injury, illness, disease, or death occurs."* The provisions are broadly written and can be read to contemplate an injury, where as here, a PMI employee is injured by one who PMI argues was merely "present" on the "platform" at "any worksite, *regardless of how, when and where such injury occurs.*"[10] Thus, this Court finds the clear language of the PMI/Unocal MSA is broad enough to encompass the factual scenario at issue.

Specifically, at the time of alleged injury, Simmons was aboard the platform, acting as a "consultant" for OCS, which in turn was working for Unocal as a Unocal contractor thus, falling within the definition of "company group" under Section 6.1 of the PMI/Unocal MSA. As discussed above, the mere fact Jeffrey Urban might have been acting as a "good Samaritan" who was "morally bound" to extinguish a fire, as argued by PMI, would not itself remove the factual scenario from the broad language of Sections 6.1 and 6.1(B) which embraces claims for personal injury arising out of the mere presence of an individual on the platform. Thus, even if this Court were to accept PMI's argument as to the facts, the facts would fall within the broadly written contractual provision. Likewise, for the reasons discussed more thoroughly above with respect to PMI's argument that allegations of "gross negligence" remove the factual scenario from the broad language of Sections 6.1 and 6.1(B) of the PMI/Unocal MSA, this Court has found otherwise for the reasons noted above.

---

[10] PMI has suggested additional discovery should be taken to further establish the facts and circumstances concerning the accident and Mr. Simmons. However, given the broad and clear language of the PMI/Unocal MSA, additional discovery is not needed.

Thus, this Court finds PMI's arguments that it owes no defense to Simmons for these reasons not to be persuasive.

### d. Whether Warranty Provisions under the OCS/Unocal MSA Relieve PMI from the Duty to Defend Simmons for Claims by Jeffrey Urban Against Simmons

PMI further argues it owes no defense obligation to Simmons under the PMI/Unocal MSA, "as Mr. Urban's accident did not arise out of or result from services performed by PMI under the contract, but instead arose out of Simmons' . . . breach of warranties to Unocal." (Response to Statement of Facts not in Dispute, ¶ 3). As noted above, Simmons had no contract with Unocal. The only contracts with which this Court has been presented are: (1) the PMI/Unocal MSA; (2) the OCS/Unocal MSA; and (3) the OCS/Simmons "Consultant Agreement". This Court has been presented with no contract between Simmons and Unocal whereby Simmons warranted performance of his services to Unocal. Thus, again it is unclear to this Court what warranty *to Unocal* Simmons allegedly breached. Again, this Court finds PMI's argument without merit. Additionally, also, for the reasons discussed above with respect to OCS and the alleged breach of warranties under Section 13.9 of the OCS/Unocal MSA, this Court rejects PMI's argument.

In consideration of the foregoing, this Court finds there is no genuine of issue of material facts as to the following: (1) PMI's employee, Jeffrey Urban, filed a petition seeking damages from OCS and Simmons related to Jeffrey Urban's bodily injuries allegedly resulting from the negligence of OCS and Simmons while aboard Unocal's platform; (2) Section 6.1 and 6.1(B) of the PMI/Unocal MSA provides PMI shall defend the "company group" in "each and every case," including "any case" in which a company group members may be "alleged or proven" to have been negligent, from and against "any and all liability or . . . attorney's fees" directly or indirectly "*arising out of*" or "in

-28-

connection with" any personal bodily injury, illness, disease, or death to PMI's employees directly

or indirectly "arising out of" or "in connection with" any operations or goods and services under this

contract, including, "without limitation," any loading or unloading, ingress or egress, cargo

operations, "and/or the *presence* of any individual," on "any vessel, *platform* or other premises" or

at "*any worksite, regardless of how when, or where such injury, illness, disease or death occurs*;"

(3) Simmons falls within the class of persons, namely "the company group," as defined in Section

6.1 of the PMI/Unocal MSA, to whom PMI potentially owes a duty to defend under the PMI/Unocal

MSA; (4) OCS falls within the class of persons, namely "the company group," as defined in Section

6.1 of the PMI/Unocal MSA, to whom PMI potentially owes a duty to defend under the PMI/Unocal

MSA; (5) the accident in this matter falls within the scope of the defense obligation owed by PMI

pursuant to the broad and clear language of Sections 6.1 and 6.1(B) of the PMI/Unocal MSA; and

(6) PMI is not relieved of its contractual obligations by way of an alleged breach of warranty by OCS

and/or Simmons.

   This Court, thus, finds OCS and Simmons are entitled to a judgment as a matter of law that

PMI owes OCS and Simmons the duty to defend Simmons and OCS from the claims made by PMI's

employee, Jeffery Urban.   Therefore, this Court GRANTS the Motion for Summary Judgment

insofar as OCS and Simmons seek a judgment in favor of OCS and Simmons against <u>PMI</u> for

complete and full defense of the claim brought as against them by Jeffrey Urban.

**D.    A judgment in favor of OCS and Simmons against PMI and LIC for the reimbursement of all defense costs incurred by OCS and Simmons thus far, as per the contractual obligation agreed to by PMI**

   OCS and Simmons also, seek from PMI and LIC the reimbursement of "all defense costs

incurred by OCS and Simmons thus far, as per the contractual obligation agreed to by PMI."   In

opposition, PMI and LIC argue OCS and Simmons have made no showing that OCS and Simmons have paid any defense costs.

As discussed above, this Court has been presented with no copy of the LIC insurance policy on which this Court may rely to determine whether there is a basis to conclude LIC owes the obligation OCS and Simmons seek from LIC.  Accordingly, the request by OCS and Simmons for a judgment in favor of OCS and Simmons for the reimbursement of all defense costs incurred" from LIC is DENIED.

Further, as noted previously, the narrow issue which this Court has sufficient evidence to address is whether *PMI* owes OCS and Simmons the cost of defense in this matter.  Having determined PMI owes defense to OCS and Simmons, as discussed above, the now remaining issue is whether reimbursement is owed.

PMI and LIC note this Court has been presented with no evidence as to the amount of costs OCS and Simmons actually incurred defending this matter.  Accordingly, the request for a *monetary* amount awarded in favor of OCS and Simmons and against PMI for the reimbursement *of defense costs incurred* by OCS and Simmons is **DENIED** as **PREMATURE**. [11]

---

[11] It is noted that OCS, Simmons, PMI and LIC have argued, by way of analogy to cases involving attorney fee awards in the pursuit of enforcing "indemnity" agreements, whether Texas law allows for the recovery of attorney fees incurred in the pursuit of enforcing the duty to defend.  PMI and LIC argue, "under Texas law, OCS and Simmons are not entitled to recover attorney's fees incurred in the pursuit of indemnity or insurance coverage," relying on *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1221 (5th Cir. 1986) ("With respect to the attorney's fees incurred by Mesa in establishing its right to indemnification, Mesa concedes that the District Court erred in awarding those fees").  In response, OCS and Simmons note Texas jurisprudence allows parties to recover attorney fee awards for pursuit of indemnification, relying on: (1) *Atchison, Topeka and Santa Fe Railway Co. v. Sherwin-Williams Co.*, 963 F.2d 746, (5th Cir. 1992)("the fact that Santa Fe is entitled to recover only 50 percent of Neal's claim does not preclude the award of all fees reasonably and necessarily incurred in pursuing indemnification for Neal's entire claim"); (2) *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex.App.--El Paso 1993)("Under Texas law, an indemnitee may recover litigation costs incurred while enforcing an indemnity agreement even though such costs are not specifically covered by the agreement"); and (3) *Hammond v. Travelers Indem. Co.*, 553 S.W.2d 205 (Tex.App. Houston 1977)(where one party agreed to indemnify the other for

## CONCLUSION

In consideration of the foregoing, this Court **GRANTS** in **PART** and **DENIES** in **PART** the

Motion for Summary Judgment, as discussed herein.

The request by Operators & Consulting Services(OCS) and Larry Simmons (Simmons) for

a judgment in favor of OCS and Simmons against Production Management Industries, L.L.C. (PMI)

and PMI's insurer, Lexington Insurance Company (LIC), for the full amount of any judgment

---

"all legal and other costs, counsel fees and expenses which the Company shall at any time sustain, directly or indirectly, by reason or in consequence" of a contractual suretyship agreement, the court found the language "clearly allowed for the recovery of attorney's fees expended in enforcing the indemnity agreement").

Until this Court enjoys the opportunity to review evidence of the defense costs incurred by OCS and Simmons, this Court need not consider the parties' argument as to costs in pursuit of the duty to defend because this Court has no evidence any such costs are at issue. However, assuming **arguendo** counsel for OCS and Simmons seek an award for costs related in part to the pursuit of enforcing PMI's duty to defend OCS and Simmons, it would seem the reasoning of the jurisprudence relied on by OCS and Simmons are of greater illustrative benefit to this Court than is the matter cited by PMI and LIC.

Specifically, in *Fontenot, supra*, which is relied on by PMI and LIC, the issue of an attorney's fees incurred by one party in establishing its right to indemnification was not directly before the court because the party pursuing indemnity in *Fontenot* simply "conceded" that "the District Court erred in awarding those fees." The *Fontenot* matter otherwise provides insufficient guidance for this Court to conclude an attorney fee award is not recoverable under Texas law for the pursuit of establishing a duty to defend. On the other hand, in *Atchison, Topeka and Santa Fe Ry. Co, supra,* which is one of the matters relied on by OCS and Simmons and which was rendered more recently than *Fontenot, supra,* the Fifth Circuit considered an attorney fee award related to the pursuit of indemnification. There, the Fifth Circuit observed Texas state law provides, "[a] person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." 963 F.2d 746, 751 (*citing* Tex.Civ.Prac. & Rem.Code Ann. § 38.001). By the "plain language" of Tex.Civ.Prac. & Rem.Code Ann. § 38.001, the Fifth Circuit reasoned Santa Fe could recover "all fees reasonably and necessarily incurred in pursuing indemnification." *Id.*

Should OCS and Simmons chose to pursue an award of an actual monetary amount, counsel for OCS and Simmons are ORDERED to file the appropriate motion, memorandum and affidavit of fees and costs into the record within ten days of the issuance of this Memorandum Ruling. PMI has ten days thereafter to file into the record any legal argument or objections they might have to OCS's and Simmons' request. If no dispute remains as to the amount of attorneys fees, OCS, Simmons and PMI are to submit to the Court an agreed to judgment reflecting the agreed to amount.

rendered against OCS and Simmons, together with interest, attorney's fees, costs, expenses, and other damages to which OCS and Simmons are entitled is hereby **DENIED**.

The request by OCS and Simmons for a declaration that OCS and Simmons are entitled to additional insured coverage under the LIC policy of insurance issued by LIC to PMI with respect to "all claims asserted herein" against PMI and LIC is hereby **DENIED**.

The request by OCS and Simmons for a judgment in favor of OCS and Simmons against PMI and LIC for "complete and full defense and indemnification" is **DENIED** as to all claims for **indemnification** against PMI and LIC. The request by OCS and Simmons for a judgment in favor of OCS and Simmons against PMI and LIC for complete and full **defense** is **DENIED** as to all claims for defense against LIC. The request by OCS and Simmons for a judgment in favor of OCS and Simmons against PMI for complete and full **defense** is **GRANTED** as to the claims for defense against PMI.

The request by OCS and Simmons for a judgment in favor of OCS and Simmons against PMI and LIC for the reimbursement of "all defense costs incurred thus far, as per the contractual obligation agreed to by PMI," is **DENIED** as to the claim for reimbursement against LIC. To the extent OCS and Simmons seek a monetary award against PMI for the reimbursement of "all defense costs incurred thus far," their request is **DENIED** as **PREMATURE**. Should OCS and Simmons chose to pursue an award of an actual monetary amount, counsel for OCS and Simmons are ORDERED to file the appropriate motion, memorandum and affidavit of fees and costs into the record within ten days of the issuance of this Memorandum Ruling. PMI has ten days thereafter to file into the record any legal argument or objections they might have to OCS's and Simmons'

request.  If no dispute remains as to the amount of attorneys fees, OCS, Simmons and PMI are to submit to the Court an agreed to judgment reflecting the agreed to amount.

THUS DONE AND SIGNED in Lafayette, Louisiana, this ___27___ day of ___July___, 2007.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE